UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 10-20137-CIV-MORENO/TORRES

JOSE LITO ORELLANA, and others similarly-situated,

    Plaintiff,

vs.

TECTA AMERICA SOUTH FLORIDA, INC. f/k/a Weiss & Woolrich Southern Enterprises, Inc., before merger, HENRY GEMBALA, individually, and C.G.R. CONSTRUCTION CO., INC., a Florida corporation,
_____/

## PLAINTIFF'S MOTION IN LIMINE

COMES NOW, Plaintiff, by and through his undersigned counsel, pursuant to the Federal Rules of Civil Procedure, and files this above-described Plaintiff's Motion In Limine, and states as follows in support thereof:

### The Cause of Action

This is an action to recover money damages for unpaid overtime wages pursuant to the laws of the United States, 29 U.S.C. § 215(b) ("the FLSA").

**A.**  **Immigration Status**

Any reference to Plaintiff's legal status, or inferences to be drawn, should be excluded. It is well established that undocumented aliens are protected by the FLSA. *Patel v. Quality Inn South*, 846 F.2d 700, 704 (11th Cir. 1988). Defense counsel has been repeatedly advised by Judges in the Southern District of Florida that the argument is frivolous:

    *1.*  In the companion case of *Barrera, et al. vs. Weiss & Woolrich Southern Enterprises, Inc., et al., Case no. 09-21841-CIV-GRAHM*, Judge Graham found that *"Defendants'*

*argument for summary judgment on the basis of plaintiff's immigration status is without merit*" [D.E. 74-1 p. 4].

2. In *Galdames v. N & D Investment, Corp.*, 2008 WL 4372889 (S.D.Fla. Sep. 24 2008), Judge Cooke rejected the same argument as follows: *"To begin with, the Court cannot fathom how Defendants can argue with a straight face"* that undocumented aliens are not protected by the FLSA.

3. In *Vallecillo v. Wall to Wall Residence Repairs, Inc.*, 08-22271-CIV-UNGARO, as follows: *"Indeed the Court is perplexed that Defendants have even argued for dismissal on this basis. Defendant's counsel should be well aware that courts in this district have repeatedly rejected this argument, as he was counsel in at least one such case."* Exhibit 1.

4. In *Martinez-Pinillos v. Air Flow Filters, Inc.*, 2010 WL 2650912, n. 8 (S.D.Fla.,2010), Judge Martinez wrote that the argument raised by Mr. Kleppin is *"without merit."*

5. Recently, in *Rakip vs. Paradise Awnings Corp., et al., Case No. 10-20004-CIV-COOKE*, Judge Cooke held *"[s]ince the Defendants' counsel fails to discuss or distinguish the controlling authority from the Eleventh Circuit, or my past orders on this same issue, the Defendants position on this issue is **frivolous**."* [D.E. 131-3].

However, Plaintiffs fear that defense counsel will relentlessly attempt to pursue this issue indirectly. There is a pending FLSA retaliation action by Plaintiff and other similarly-situated employees. Defense counsel asked two presiding judges to report similarly-situated plaintiffs, as well as Plaintiff himself, to the U.S. Attorney's office for arrest and deportation, amongst other matters. In that case, defense counsel testified as to how strongly he feels about the

undocumented alien argument. *"I just think it's so clear that Hoffman overrules Patel," "I really, really, do like my argument," "if I was an appellate judge, I would accept my argument. I would -- if I was on the Eleventh Circuit, I would say Patel vs. Quality Inn South has absolutely been overruled."* [D.E. 132 ¶¶12, 13].

Plaintiff's immigration status is irrelevant to his claims for unpaid overtime and minimum wages. Permitting Defendants to inject the immigration status question will reasonably dissuade an employee from pursuing an FLSA action. *Ponce v. Tim's Time, Inc.,* 2006 WL 941963, * 1 (N.D. Ill.2006) ("allowing immigration status evidence in would **surely chill the vindication of rights** under the FLSA; Congress chose to afford the protections of the Act to undocumented workers, and the courts should not undermine that decision. Thus, to the extent the evidence is admissible under Rule 402, it will be excluded under Rule 403") (emphasis added). "As several courts have noted, 'it is entirely likely that any undocumented [litigant] forced to produce documents related to his or her immigration status will withdraw from the suit rather than produce such documents and face ... potential deportation." *Uto vs. Job Site Services, Inc., et al.*, 269 F.R.D. 209 (E.D.N.Y. 2010) *citing Topo v. Dhir,* 210 F.R.D. 76, 79 (S.D.N.Y.2002). "Such a chilling effect would 'effectively eliminate the FLSA as a means for protecting undocumented workers from exploitation and retaliation." *Uto vs. Job Site Services, Inc., et al.*, 269 F.R.D. 209 (E.D.N.Y. 2010), *citing Flores vs. Amigon,* 233 F.Supp.2d 462, 465 (E.D.N.Y.,2002).

The policy which prevents evidence pertaining to immigration status is so strong, that employers may not even reference the employees' *use* of a false social security number in their application for employment. "The defendant contended that the plaintiff falsely represented himself to be employable as a U.S. citizen. The court held that the LWPA **applied to all**

3

**employees, regardless of their nationality**... The information sought by defendants is not relevant to plaintiffs' LWPA claims." *Baca vs. Brother's Fried Chicken*, 2009 WL 1349783 (E.D.La.); *Ponce vs. Tim's Time, Inc., et al.* 2006 WL941963, *1 (N.D. Ill. 2006) (*holding* that evidence of immigration status is "such a **hot button issue of late ...** the Court finds that the danger of unfair prejudice-not just prejudice, but unfair prejudice-is indeed high. Therefore, the Court will exclude the evidence. The defendants are barred from eliciting or attempting to elicit evidence or testimony from which the jury **could reasonably infer** that the Plaintiff may be undocumented workers.") (emphasis added).

In this case, Defendants, over objection, asked Plaintiff about his employment application with Defendants.  Plaintiff stated that he gave his name.  Defendant attempted to interject that Plaintiff provided a social security number.  *Plaintiff did not state* that he provided a false social security number. [D.E. 75-1 p. 79].

The same principle applies to questions about drivers' licenses.  It is commonly known that the State of Florida will not issue a driver's license to an undocumented alien since 2001.  Similarly, the Plaintiff's lack of a driver's license does not advance any of Defendants' arguments, which only seek to create an inference of immigration status to the jury. Therefore, all questions relating to Plaintiff's drivers license should be excluded to avoid improper inferences. Additionally, the evidence of immigration status is inadmissible by Federal Rule of Evidence 403, since the "danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time."

Defendants should not subvert the jury by introducing evidence of Plaintiff's immigration status and driver's license as it does not bear on any material issue in the case.

B.      **Reference to Plaintiff's nonpayment of income taxes**

Plaintiff's income tax returns, including non-filing of income tax returns, should be excluded because it is a back-door method to engage in immigration status questions, *infra*. In this case, over objection, Defendants asked Plaintiff in deposition whether he had filed income tax returns over a two-year and a half period. Plaintiff answered in the affirmative. [D.E. 75-1 p. 42].

**Eleventh Circuit Precedent on the Use of Collateral Tax Matters to Impeach Witness**

In *United States v. Calle*, 822 F.2d 1016, 1021 (11th Cir.1987), defense counsel asked a government witness whether he had filed tax returns from 1981-1985. It was held, *"Defense counsel's questions regarding Garcia's tax returns and his compliance with the plea agreement were merely attempted __excursions into collateral matters__ . . . these queries were not relevant to the core issues of the case." Id.* at 1020. The Eleventh Circuit noted that the defense attempted to impeach a government witness with prior acts of misconduct, a matter *prohibited by Rule 608(b). Id*. at 1018.

Similarly, Southern District of Florida Courts, have held that tax returns are inadmissible for impeachment purposes.[1] In *Ortiz v. Santuli Corp.,* Slip Copy, 2009 WL 2382144, *1 (S.D.Fla. 2009) [emphasis added], the Honorable Magistrate Judge Simonton ruled:

> *the undersigned concludes that Defendants shall be precluded from suggesting that Plaintiffs failed to pay income taxes because such evidence will likely create undue prejudice in the minds of the jurors; and, it will likely give rise to* **collateral disputes***-including the extent of Plaintiffs' reporting obligations regarding such taxes-that will cause undue delay and confusion of the issues.*

---

[1] In the companion, *Barrera* case*,* the Honorable Judge Graham issued an order in Limine allowing the use of income tax returns for impeachment purposes and citing *Chamblee v. Harris, & Co.,* 154 F.Supp. 2d 670, 681 (S.D. N.Y. 2001). That case cannot be reconciled with the Eleventh Circuit's decision in *Calles, supra.*

5

In *Special Purpose Accounts Receivable Coop. Corp. v. Prime One Capital Company LLC, et al., Case No. 00-6410-CIV-MARRA*, Judge Marra excluded from evidence the use of tax returns for similar reasons. Judge Marra limited the use of the tax returns to the issues raised in the affirmative defenses:

> *The use of the tax returns and financial statements shall be limited to Plaintiffs' attempt to demonstrate that they are inconsistent with the litigation positions taken by Defendants in this case, or to support affirmative claims or defenses as to which any party has the burden of proof.* ***They shall not be used to elicit testimony or argument that Defendant Borzilleri committed or attempted to commit tax fraud or evade the payment of taxes due.*** Exhibit 2, p.4.

The evidence is inadmissible on its face. It will create unnecessary delays by engaging in *collateral* matters which are not relevant to the case. Consequently, any reference to Plaintiff's income tax returns should be excluded.

### Argument that Payroll Records Are the Time Records Required By the FLSA

Plaintiff has settled a portion of the case with Co-Defendant, C.G.R. Construction, Co., Inc. The only remaining portion of the claim is for off-the-clock work.[2] This case will therefore turn on whether the remaining Defendant *properly kept time records*. Defendants intend to argue that the *secondary payroll records became* Plaintiff's time records. Some of the payroll records evidence *some overtime* pay, but do not reflect the hours off-the-clock. Allowing Defendants to raise such argument will be devastating to Plaintiffs' claim. Defendants will appear to be playing by the rules, when they were not recording the off-the-clock work.

In the companion *Barrera* action, Defendant TECTA argued that the similarly-situated employees could not have worked off-the-clock because their supervisor, Jorge Nunez, who

---

[2] This statement should not be deemed a waiver of the joint employment claim, nor any arguments that follow from that claim, such as against TECTA in this case, as well as in the remaining claims in the companion cases, where Plaintiff's counsel represents similarly-situated employees.

worked the same hours, was paid overtime. Exhibit 3.  At the summary judgment level in this case, Plaintiff showed that the supervisor, Jorge Nunez, was paid overtime during the relevant time period in this case, after August 28, 2007, while the similarly-situated plaintiffs in his crew were not.

### The Law, Payroll Records Are Not Time Records

Employers must keep time records reflecting hours worked, the day of the week worked, as well as the time of the day when the employee worked.  The Eleventh Circuit addressed this issue:

> *[Employer] was obligated to 'maintain and preserve' records of the 'regular hourly rate of pay for any workweek in which overtime compensation is due under [§ 207(a)]…' 29 C.F.R. § 516.2(a)(6)(i). It was also obligated to maintain records of the '[h]ours worked each workday and total hours worked each workweek.' 29 C.F.R. § 516.2(a)(7). Klinedinst v. Swift Investments, Inc., 260 F.3d 1251, 1257 (2001).*[3]

29 C.F.R. § 516.2(a)(7), requires that an employer maintain payroll records in the following fashion:

> *Every employer **shall maintain and preserve** payroll and other records containing the following information and data with respect to each employee to whom …section… 7(a) of the Act apply:*
> *(5) **Time of day and day of week** on which the employee's workweek begins (or for employees employed under section 7(k) of the Act, the starting time and length of each employee's work period).*
> *(7) Hours worked **each workday** and total hours worked each workweek (for purposes of this section, a "workday" is any fixed period of 24 consecutive hours and a "workweek" is any fixed and regularly recurring period of 7 consecutive workdays). Id.*

---

[3] The Eleventh Circuit also recognizes the importance of keeping other records required by the FLSA, such as records evidencing the cost of meals to employees when there is an allegation that the minimum wage was met because the value of meals provided to employees is enough to meet the minimum wage.  When the employer fails to meet the record-keeping provisions of the FLSA it must bear the consequences. *Donavan v. New Floridian Hotel,* 676 F.2d 468, 474 (11th Cir. 1982) (citing obligation imposed by 29 C.F.R. § 516.27 (b)).

The employer's obligation to maintain time records is also found in 29 U.S.C. § 211(c), which states:

> *(c) Records*
> *Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time,* ***and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder****. Id.*

TECTA's time records do not comply with the FLSA, (1) *time of day when employee worked*, (2) *day of week*, nor (3) *the starting time and length of each employee's work period*.

The statute created a mandatory duty to preserve records so that the Department of Labor may in turn enforce the requirement of the FLSA:

> *This function is, indeed, the primary duty of the employers under the Act and* ***may not be delegated*** *to the employees so as to excuse the employers for ant neglect or default in the connection.* ***The record-keeping requirements are fundamental underpinnings of the Act, for only by relying on employers' records can the Secretary of Labor with his limited facilities hope to be able to enforce the substantive provisions. Failure to keep accurate records can obscure a multitude of minimum wage and overtime violations.*** *Wirtz v. Mississipi Publishers Corporation,* 364 F.2d 603, 607 (5th Cir. 1966) (emphasis added).

Defendants' time records do not comply with the FLSA.  They do not show the time of the day worked, or when Plaintiffs had their meal periods. They are always rounded off to the hour or the half hour. Exhibits 4 through 10.  Defendants intend to argue that Plaintiffs were paid for their meal period.  It would be unfair for them to make this argument when the *primary* time record does not evidence the time of the day worked.   More so when Defendants intend to argue that the payroll record, reflecting some overtime pay, was the record required by the FLSA.

Defendants should not be allowed to argue that *payroll* records are the time records required by the FLSA. That argument would make Defendants seem clean when in fact they were not properly paying employees for time worked off-the-clock.

### Post-Employment Events

All evidence of Plaintiff's post-employment such as what Plaintiff intends to do with the money upon a favorable verdict, whether he intend to send the money to his family members, post-job hires, and unemployment compensation claims should be excluded. Those facts are irrelevant as they occurred after employment with Defendants. Moreover, such questions will infringe upon the immigration issue (i.e., chilling effect) rejected by the Court. Defendants also intend to portray Plaintiff as a lazy person which should be excluded pursuant to Rule 404(b).

Defendants should be excluded from asking what Plaintiff intends to do with the money upon a favorable verdict, including whether he intends to file income taxes on a jury verdict. Such evidence is irrelevant, unfairly prejudicial, and subject to an automatic exclusion. *Calles*. Additionally, the line of questioning is tied to immigration because Defendants will raise an improper inference that the money will be sent to another country. Defendants will also attempt to infer that upon a favorable verdict the money will be used to illegally bring relatives to the country as they have done in the companion cases.[4]

**C.** **Character of Witnesses**

Improper character evidence should be excluded. Defendants will ask Plaintiff whether he believed his foreman or any other defense witness were good or honest people. Such evidence is inadmissible pursuant to Fed.R.Evid. 608(a). Such evidence would only come in if the

---

[4] Mr. Kleppin has asked in the companion case of *Barrera* "And your dream is to get a lot of money in this lawsuit and pay for your whole family to come to America; correct?" and "You're not going to bring them all here if you hit it big?" Exhibit 11.

character of the supervisor was attacked *"by opinion or reputation evidence."* That has not happened here. In deposition, Plaintiff did not even testify that his supervisor was dishonest. When asked, *"Was he honest?"* Plaintiff responded that he did not like the way his supervisor treated him. [D.E. 75-1 pp. 77, 78].

In addition, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to **show action in conformity**. Fed.R.Evid. 404(b). Evidence that the foremen were good or honest people should be excluded at trial.

### D.     Reference to Defendant Gembala's Aneurysm; Financial Condition of Business

Defendants have revealed that Mr. Gembala suffered from 3 brain aneurysms. Defendants should not be allowed to raise that issue in order to gain sympathy from the jury. Such facts are irrelevant and unfairly prejudicial. Fed.R.Evid. 401-403.

Similarly, Defendants should not be allowed to introduce evidence that the business was affected by the economic downturn.

### E.     Untimely disclosed witnesses

"The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." *Dunstan v. Wal-Mart Stores East, L.P.*, 2008 WL 2025313 (M.D.Fla. 2008.) *citing United States v. Proctor & Gamble Co*., 356 U.S. 677, 682, 78 S.Ct. 983 (1958). Defense counsel routinely and untimely discloses witnesses at trial that were not previously disclosed to

10

Plaintiff.[5] The Court should exclude any untimely disclosed witnesses that Plaintiff cannot depose now because of expiration of the discovery deadline.

Similarly, Defendants repeatedly circumvent the rules relating to initial disclosures by offering incomplete initial disclosures, then supplementing disclosures after the discovery deadline, when Plaintiff could not conduct any further discovery. The proper remedy is exclusion at trial of all *substantive* witnesses not previously disclosed to prevent trial by ambush and unfair surprise. *O'Donnell v. Georgia Osteopathic Hosp., Inc.*, 748 F.2d 1543, 1549 (11th Cir. 1984).

**F.** **Reference to attorney fees, costs; Plaintiff's retainer agreement**

Any reference to attorney fees and costs should be excluded under Federal Rule of Evidence 403 as its probative value is substantially outweighed by the danger of unfair prejudice and confusion of the issues. Referencing attorney fees and costs has absolutely no probative value toward proving or disproving the merit of Plaintiff's substantive claim and can only possibly serve to confuse and prejudice the jury. As such, any reference to attorney's fees, costs, and Plaintiff's retainer agreement at trial should be excluded.

**G.** **Liquidated Damages**

Any reference to Plaintiff's claim for liquidated damages pursuant to 29 U.S.C. § 216(b) should be excluded pursuant to Federal Rule of Evidence 403 as its probative value is substantially outweighed by the danger of unfair prejudice and confusion of the issues. Liquidated damages are assessed by the Court, not the jury, and therefore unnecessary to be

---

[5] The undersigned, as well as his associate, are aware of four other recent cases where defense counsel has attempted to call undisclosed witnesses at trial under the guise of impeachment witnesses: in the matters of *Galdames v. N & D Investment Corp., Case No. 08-20472-CIV-COOKE*, *Martinez-Pinillos v. Air Flow Filters, 09-22453-CIV-MARTINEZ*, *Barrera-Solano v. A Navas Party Productions, 09-22847-CIV-ALTONAGA*, and *Rakip vs. Paradise Awnings Corp., et al., 10-20004-CIV-COOKE*.

mentioned before a jury. *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.,* 515 F.3d 1150, 1163 (11th Cir. 2008).

H.  **Settlement Demands**

The Court should exclude all references to settlement. During Plaintiff's deposition, Defendants inquired about settlement demands, over Plaintiff's objections. Defendants will attempt to use the improper deposition questions to impeach Plaintiff during trial. Federal Rule of Evidence 408 expressly prohibits "conduct or statements made in compromise negotiations regarding the claim." The only exceptions to this rule are enumerated in (b), and none apply to this case.

I.  **Hearsay Advice of Overtime Laws**

Gembala will attempt to testify that he consulted with an attorney to determine whether his payroll practices complied with the FLSA. Gembala never listed the attorney as a witness. He will also say that he was audited by the Department of Labor and passed with "flying colors."

> Q   Have you ever sought the advice of an attorney to determine whether you were in compliance with all the wage and hour laws that exist?
> A   I had a state audit with the labor department, and we came away with flying colors with the State of Florida labor department.
> Q   What year was that?
> A   Probably '06, '05.
> Q   Okay. Do you have copies of that audit?
> A   No, but I think they do.
> Q   Who is "they"?
> A   The state.
> Q   Did you seek the advice of counsel in connection with that audit?
> A   No, but I've taken -- I've spoken to attorneys regarding the laws, and I've attended seminars regarding the labor laws and things like that, yes. [D.E. 112 pp. 46, 47].

Any testimony about a DOL investigation would be improper and perhaps perjury. In Response to a Request for Production, Defendant TECTA responded that the company had no documents pertaining to DOL investigations. [D.E. 132 ¶¶14, 15]. Any reference to the DOL

investigations would be barred by the best evidence rule. Fed.R.Civ.P. 1002. *'The purpose of the Rule is to prevent inaccuracy and fraud when attempting to prove the contents of a writing [or recording].'* U.S. v. Holland, 223 Fed.Appx. 891, 898 (11th Cir. 2007).

Mr. Gembala may attempt to testify that he was advised by a lawyer as to his payroll practices. Gembala never listed the attorney as a witness. Whatever someone told Defendants in regard to this *central issue* is inadmissible hearsay. Fed.R.Evid. 802. Moreover, the evidence should be excluded as unduly prejudicial. Fed.R.Evid. 403. The same issue was recently ruled upon by Judge Cooke who granted Plaintiff's Motion to exclude the same type of testimony. [D.E. 131-3]. Such witness should have been listed in order for Plaintiff to depose him and determine whether his advice was *objectionably reasonable*. *See Fuentes v. CAI Intern., Inc*, 728 F.Supp.2d 1347, 1356 (S.D.Fla.,2010) (advice of lawyer must be objectively sound). In this case, any attorney would have a difficult time stating that time records kept by Defendant complied with the FLSA.

In addition, Gembala would probably commit perjury if he testifies that he consulted with an attorney. In *a previous* deposition, he was asked whether he consulted with an attorney about his obligation to pay overtime wages. He responded, *"Why would I consult with somebody for something I know and something that C.G.R. knows and something that everyone knows."* After he was pressed for an answer, he still evaded, and then stated, *"Why would I consult when I know the answer? "Well that's my answer. I have to look into it." "Right now, no, I don't recall."* [D.E. 54-1 pp. 242-5].

WHEREFORE, Plaintiff requests that the Court grant Plaintiff's Motion in Limine and exclude references to the aforementioned issues at trial.

**CERTIFICATE OF CONFERRAL**

Plaintiff has attempted to confer with opposing counsel regarding the relief raised herein by calling him twice at his office and sending him an e-mail. Defense counsel has yet to respond.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via transmission of Notices of Electronic Filing generated by CM/ECF, to Chris Kleppin, Esq. of Glasser, Boreth & Kleppin, P.A., 8751 West Broward Boulevard, Suite 105, Plantation, Florida 33324, on this 28th day of February, 2011.

        THE LAW OFFICES OF
        EDDY O. MARBAN
        Ocean Bank Building, Suite 350
        782 N.W. LeJeune Road
        Miami, Florida 33126
        Telephone (305) 448-9292
        Facsimile (305) 448-2788
        E-mail: marban@bellsouth.net

        By: *s/Edilberto O. Marban*
            EDDY O. MARBAN, ESQ.
            Fl. Bar No. 435960